FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 16, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TODD DAVID BATES (03),<br><br>Defendant. | No.   2:14-cr-00124-SMJ-3<br><br>**ORDER DENYING MOTION FOR SENTENCE REDUCTION** |

This matter comes before the Court, without oral argument, on Defendant Todd David Bates's (03) Motion for Sentence Reduction. ECF No. 935. The Government opposes Bates's motion. ECF No. 938. After review of the motions and file in this matter, as well as the controlling legal authority, the Court is fully informed and denies Bates's motion.

### BACKGROUND

On September 16, 2014, a grand jury indicted Bates on charges of conspiracy to commit murder for hire of J.W., J.M., T.S., as well as conspiracy to distribute heroin. ECF No. 17. A year later, Bates pleaded guilty to conspiracy to commit murder for hire of J.M. in violation of 18 U.S.C. § 1958 and conspiracy to distribute heroin in violation of 21 U.S.C. §§ 841(a)(l), 846. ECF No. 476. In his plea

ORDER DENYING MOTION FOR SENTENCE REDUCTION – 1

agreement, Bates admitted the following facts related to the planned murder of J.M.:

> On or about February 14, 2013, Todd Bates, upon the solicitation and direction of co-defendant James Henrikson, traveled from Spokane, Washington, to Chicago, Illinois, to solicit an individual known as "The Wiz" or "Wiz" (Marvin Martin) to murder Jed McClure. Henrikson directed Bates to do so through Robert Delao. Delao passed on the order to Bates by cellular telephone. Later the same month, Henrikson gave Delao $10,000 to pass on to Bates to hire "The Wiz" to murder McClure. Henrikson gave an additional $3,000 to Delao and Bates for travel and lodging expenses. Henrikson gave Delao a photograph of McClure and McClure's home address to assist in locating and identifying McClure so that he could be murdered. Delao met Bates in Chicago, where he passed the $10,000 and the other items on to Bates. Bates then personally asked "The Wiz" to kill McClure. "The Wiz" agreed to do so for $25,000 and accepted $10,000 in cash as a down payment. Shortly thereafter, "The Wiz" stopped accepting calls from Bates and the other members of the conspiracy, effectively stealing the $10,000.

ECF No. 476 at 5–6. He also admitted the following facts related to the conspiracy to distribute heroin:

> On or about January 11, 2013, at the direction of Henrikson, the Defendant, TODD BATES traveled from Spokane, Washington, to Chicago, Illinois. Bates met with Henrikson and Robert Delao in Chicago, where Henrikson gave Bates cash to purchase approximately eight ounces of high-quality heroin, also referred to as "China White." Bates purchased the heroin, which Delao later transported to Washington State. Delao gave the heroin to Henrikson. Henrikson then converted the heroin into pill form using a pill press, and gave some of the pills to Delao, Bates, and others to distribute within the Eastern District of Washington and elsewhere. The pills proved unmarketable, however, because they could not be crushed and smoked-the preferred method for use among the target market.

*Id*. at 6.

ORDER DENYING MOTION FOR SENTENCE REDUCTION – 2

The Court entered an order accepting the guilty plea and deferring the acceptance of the plea agreement. ECF No. 472. It later entered an order accepting the plea agreement. ECF No. 920. The Court entered its judgment, sentencing Bates to 100 months incarceration on both counts to be served concurrently with each other. ECF No. 921 at 2. It also imposed a 5-year term of supervised release. *Id*. at 3.

Bates now moves for a sentence reduction. ECF No. 935. On January 1, 2020, Bates presented to Bureau of Prisons ("BOP") Health Services ("clinic") for a chronic care clinical visit. ECF No. 935-6. The treatment provider assessed Bates as having hypertension, hyperlipidemia, hypothyroidism, obesity, asthma, and Type 2 diabetes mellitus with diabetic neuropathy. ECF No. 935-6. On April 10, Bates went back to the BOP clinic complaining of chills, a cough, sore throat and aches. ECF No. 935-1. The treatment provider assessed him as having chronic sinusitis, chronic tonsillitis, and adenoiditis. *Id*. On April 23, the BOP clinic conducted a mass screening for COVID-19 and tested Bates. ECF No. 935-3. On April 30, the BOP clinic received a positive COVID lab related to Bates. ECF No. 935-4. Bates recovered. ECF No. 935. Still, given his chronic medical history, he argues this Court should reduce his sentence because "extraordinary and compelling reasons" exist. *Id*. at 18–19. He also claims he no longer poses a danger to society. *Id*. at 19. BOP characterizes him as a "low risk for recidivism," *id*. and has approved him for

ORDER DENYING MOTION FOR SENTENCE REDUCTION – 3

a full year of halfway house placement; he will be transferred to that placement on December 1, 2020. ECF No. 941 at 9. Despite the halfway house placement, he argues his request for home detention would afford him more safety from COVID-19 reinfection than in a group setting. *Id*. at 9, n. 25.

The Government opposes his motion. ECF No. 938. It argues Bates has failed to present "extraordinary and compelling reasons" warranting a sentencing reduction. *Id*. at 11–14. It also claims Bates remains a danger to society under 18 U.S.C. § 3142(g) and none of the 18 U.S.C. § 3553(a) factors support his immediate release. *Id*. at 14–15. It finally emphasizes the victims in this case oppose his request for a sentence reduction.

**LEGAL STANDARD**

The Court has narrow authority to amend a criminal defendant's sentence of incarceration once it has been imposed. *See* 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except" in certain circumstances). The statutory mechanism under which Defendant seeks early release permits a sentence reduction if the Court finds "extraordinary and compelling reasons warrant" such relief. *Id.* § 3582(c)(1)(A)(i). The Court must also consider the sentencing factors provided in 18 U.S.C § 3553(a). 18 U.S.C. § 3582(c)(1)(A). But that provision is only available "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* § 3582(c)(1)(A).

## DISCUSSION

### A. Bates Has Satisfied the Administrative Exhaustion Requirement

Bates submitted his compassionate release request to the Terminal Island FCI warden on July 25, 2020. ECF No. 935-9. Bates apparently did not receive a response. More than thirty days have elapsed since the receipt of Bates's written request to the warden. *See id*. The Government does not dispute that Bates exhausted his administrative remedies. *See generally* ECF No. 935. The Court thus finds Bates has met the administrative exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

### B. Bates Has Not Shown Extraordinary and Compelling Reasons Warranting Release

To begin with, the Court finds Bates has failed to establish "extraordinary and compelling reasons" warranting a reduction in his sentence. While Bates highlights that he might be at a higher risk for serious illness if he contracts COVID-19, the Court does not find that Bates suffers from any "extraordinary" medical conditions under 18 U.S.C. § 3582(c)(1)(A)(i). Moreover, Bates conspired to kill three people and conspired to distribute heroin. ECF No. 476 at 5–6. Despite his

ORDER DENYING MOTION FOR SENTENCE REDUCTION – 5

efforts toward rehabilitation, the Court finds that the sentencing factors do not weigh in favor of his early release.

### 1. COVID-19 Presents A Serious, But Not Extraordinary, Risk To Bates

Bates has hypertension, hyperlipidemia, hypothyroidism, obesity, asthma, and Type 2 diabetes mellitus with diabetic neuropathy. ECF No. 935-6. The Centers for Disease Control and Prevention ("CDC") reports that people with obesity face an increased risk of suffering from severe illness if they contract COVID-19. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 13, 2020) ("cardiovascular or cerebrovascular disease, such as hypertension (high blood pressure) or stroke, might increase your risk of severe illness from COVID-19."). Type 2 diabetes also increases the risk of severe illness from COVID-19. *Id*. Moderate-to-severe asthma might increase the risk for severe illness from COVID-19. *Id*. It remains unclear whether hyperlipidemia and hypothyroidism increase the risk for severe illness. *See id*.

Bates is currently housed at Terminal Island FCI with a projected release date of December 3, 2021. *See Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Nov. 13, 2020). Terminal Island FCI reportedly has no active inmate or staff COVID-19 cases yet reports 567 inmates

ORDER DENYING MOTION FOR SENTENCE REDUCTION – 6

have recovered from COVID, and 10 inmates have died as a result of the disease. *See COVID-19 Cases*, Federal Bureau of Prisons https://www.bop.gov/coronavirus (last visited Nov. 13, 2020). Despite these low numbers at present, Bates has already been infected and recovered. *See* ECF No. 935, 935-4.

While Bates's medical conditions will likely increase his risk for severe illness, he fails to show any "extraordinary" diagnoses that warrant a reduction in sentence. Bates remains able to adequately manage his health conditions while incarcerated—and infected—so the Court finds his situation falls short of the "extraordinary and compelling" standard required under 18 U.S.C. § 3582(c).

2. **Bates Still Poses A Danger to Society**

Bates was arrested on September 17, 2014 and has served almost 74 months (a little over six years) of his 100-month sentence. *See* ECF No. 839. His expected release date is December 3, 2021. *See Find an Inmate*, *supra*.

In his presentence investigation report, Bates had a Total Offense Level of 34 and a Criminal History Score of 8; he also fell into Criminal History Category IV and Zone D of the sentencing guidelines. As noted in the presentence report, Bates has a lengthy history of criminal behavior, including convictions for refusal to cooperate (1995), theft (1995), possession of stolen property (1994), disorderly conduct (1994 and 2010), taking a motor vehicle without permission (1995), open container (1996), third degree driving while license suspended (1995, 1996, 2003),

ORDER DENYING MOTION FOR SENTENCE REDUCTION – 7

third degree negligent driving (1995), dog exhibiting vicious behavior (1996), fourth degree assault (1996 and 1999), first degree trespassing (2003), assault/domestic violence (2004), second degree theft (2006), delivery of cocaine (two counts in 2007), possession of cocaine (2007), and assault (2006). In addition to his above-listed convictions, Bates has several other arrests for which he was not subsequently convicted. Those arrests include no less than five instances of assault and two instances of violating a protection order, in addition to a robbery and several other matters.

While the Court commends Bates for his good behavior during his term of incarceration, that does not erase the serious nature of his crimes. Bates allegedly conspired to kill three people, though he pleaded guilty only to conspiracy to commit murder for hire of J.M. ECF No. 476 at 5–6. He also conspired to distribute a significant amount of heroin. *Id*. Though one goal of our criminal justice system is rehabilitation, another purpose is retribution. The Court finds it would be unjust to the victims of these crimes to grant Bates request for a sentence reduction.

3.    **The 3553-Factors Do Not Favor Release**

Along with the kinds of sentences available and the sentencing range established by the guidelines, § 3553(a) also instructs the Court to consider:

> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

  It appears BOP has determined to release Bates to a halfway house. ECF No. 941 at 9. The Court will not comment on the wisdom of that decision, but it appears that Bates's early release to a halfway house reflects his good behavior in prison. Even so, despite the increased risk posed by the pandemic, given Bates's lengthy criminal history, and the serious nature of his crimes in this matter, the Court determines it must protect the public from further crimes. So, it will not release Bates to home detention. The Court anticipates transfer to the halfway house will help Bates better reintegrate into society.

## CONCLUSION

  The Court finds that Bates has not established "extraordinary and compelling reasons" to justify his release, nor has he shown that the sentencing criteria favor a sentence reduction. Although Bates has an increased risk of serious illness if he contracts COVID-19 a second time, that alone does not suffice to grant his motion for a sentence reduction. The Court finds that any reduction in his sentence would not reflect the serious nature of his crimes nor provide adequate retribution for the victims. It appears BOP will transfer Bates to a halfway house, and the Court is

hopeful that living arrangement will help Bates reintegrate into society and reinforce the fundamentals of becoming a law-abiding, productive citizen. Bates's motion is denied.

Accordingly, **IT IS HEREBY ORDERED**:

Defendant Todd David Bates's (03) Motion for Sentencing Reduction, **ECF No. 935**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the Bureau of Prisons.

**DATED** this 16th day of November 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge